The Honorable Mike Huckabee Lieutenant Governor State Capitol, Suite 270 Little Rock, AR 72201
Dear Mr. Huckabee:
This is in response to your request for an opinion on several questions concerning a particular AIDS curriculum developed in the State of Massachusetts for use in the public schools, entitled "Preventing AIDS." You have set forth the subject areas of your questions as follows:
 SUBJECT 1: Whether the Massachusetts developed AIDS curriculum, Preventing AIDS, conflicts with national and state law and should be removed from public schools in Arkansas, and
 SUBJECT 2: What the limits of authority may be in the public schools in Arkansas regarding its right to insist that a child attend classes or clinics where AIDS and/or condom and/or homosexual issues are raised when the parents of the students object to such instruction as violative of their supreme right to teach the child regarding sexual and religious matters.
You have questioned the legality of the use of this curriculum in Arkansas public schools based, in part, on the Religious Freedom Restoration Act of 1993 (PL 103-141), approved by the U.S. Congress on November 16, 1993, and the Arkansas Department of Health appropriation act for the biennial period ending June 30, 1995 (Act 1173 of 1993, the relevant portion of which is codified at A.C.A. § 6-18-703 (Repl. 1993)). You state that it is the contention of some that the Massachusetts-developed curriculum (hereinafter "Curriculum") is contrary to the Health Department appropriation act because it stresses sexual abstinence outside a "long-term relationship" rather than "premarital" abstinence. With regard to PL 103-141, it is contended that the Curriculum "places an undue burden on a student's religious beliefs and experience since it is sanctioning behavior and indeed instructing in behavior contrary to religious teachings (i.e., sodomy or premarital sex)."
You also state, in further objection to the Curriculum, that "homosexuality is legitimized contrary to Arkansas law," citing language from the Curriculum regarding the sexual orientation of most people and the failure of the Curriculum to inform children of the sodomy laws in Arkansas. You cite, further, to Section 36(b) of the appropriation act (A.C.A. § 6-18-703(a)(1) (Repl. 1993)), regarding parental consent to school-based health clinic services, and you ask:
 (1) Does this mean that the parents must consent before the child is allowed instruction in AIDS and/or what some parents deem instruction in regard to a deviant lifestyle?
 (2) In light of Thompson v. Ark. Social Services, 282 Ark. 369 (1984) and these statutes, is not the parents' basic rights to raise their children a protected constitutional right which is being eroded by the `power of the school board' if it disregards the parents' wishes with regard to sex education issues?
Finally, you state that the Curriculum does not follow certain national guidelines promulgated by the U.S. Department of Education.
It must be initially noted, with regard to PL 103-141 (the Religious Freedom Restoration Act of 1993), that the purpose of this act, as set forth in Section 2 thereof, is to restore the legal standard used in prior so-called "free exercise cases." The act, in effect, overturns the 1990 decision of the U.S. Supreme Court in Oregon v. Smith, 494 U.S. 872. It requires application of the "compelling governmental interest" test in all cases where the exercise of religion is "substantially burdened." PL 103-141, Sec. 2(b). With regard to the "burden" element, judicial decisions under the free exercise clause of the First Amendment to the U.S. Constitution (made applicable to the states by theFourteenth Amendment) have required that a burden be shown. SeeHernandez v. Commissioner of Internal Revenue, 490 U.S. 680
(1989). Thus, PL 103-141 did not create new law in this regard.
It is my opinion that if faced with the question a court would conclude, generally, that the Curriculum does not impermissibly burden the free exercise of religion. It seems clear, based on case law in this area, that exposure to ideas that one finds objectionable on religious grounds does not rise to the level of a free exercise claim. See Alfonso v. Fernandez,584 N.Y.S. 2d 406 (1992); Ware v. Valley Stream High School District,551 N.Y.S. 2d 167 (1989); Mozert v. Hawkins County Bd. of Educ.,827 F.2d 1058 (6th Cir. 1987); Grove v. Mead School Dist. No.354, 753 F.2d 1528 (9th Cir. 1985); Wilson v. Block,708 F.2d 735 (D.C. Cir. 1983); Williams v. Bd. of Educ., 388 F. Supp. 93
(D.C.W.Va.), aff'd. 530 F.2d 972 (4th Cir. 1975); Davis v.Page, 385 F. Supp. 395 (D.C.N.H. 1974). The possibility that religious beliefs may be offended or contradicted does not satisfy the requirement that those beliefs are unduly burdened.Id. The United States Supreme Court has stated that the free exercise clause of the First Amendment affords protection from governmental compulsion. Bowen v. Roy, 476 U.S. 693 (1986). The "evil prohibited by the Free Exercise Clause" has been identified as "governmental compulsion to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion." Mozert, 827 F.2d at 1066. Thus, it has been stated that:
 . . . governmental actions that merely offend or cast doubt on religious beliefs do not on that account violate free exercise. An actual burden on the profession or exercise of religion is required. [Citation omitted.]
 In short, distinctions must be drawn between those governmental actions that actually interfere with the exercise of religion, and those that merely require or result in exposure to attitudes and outlooks at odds with perspectives promoted by religion.
Grove, 753 F.2d at 1543.
The court in Mozert, supra, following this analysis, refused to accept the contention that the element of compulsion was supplied by the requirement of class participation in reading exercises that were objectionable on religious grounds.[1]
Dispositive in the court's view was the fact that there was no showing of governmental compulsion to engage in conduct that violated the objector's religious convictions. 827 F.2d at 1065. The court in Mozert refused to apply cases based on governmental requirements that entail affirmation or denial of a religious belief, or performance or non-performance of a religious exercise or practice. Id. at 1065. Instead, the court viewed the case as one involving exposure to ideas and themes repugnant to the objector's religious beliefs. Id. at 1064. The court distinguished the U.S. Supreme Court's decision inWisconsin v. Yoder, 406 U.S. 205 (1972) (holding that Wisconsin could not require the Amish to send their children to public school after the eighth grade),[2] concluding that:
 . . . Yoder rested on such a singular set of facts that we do not believe it can be held to announce a general rule that exposure without compulsion to act, believe, affirm or deny creates an unconstitutional burden.
Id. at 1067.
With regard to the Curriculum in question, I believe, based upon the objections raised, that a challenge would likely fall under the so-called "mere exposure" cases. Being exposed to this material may be offensive to some, but it does not constitute the compulsion described in the judicial decisions, where the objector was required to affirm or deny a religious belief or engage or refrain from engaging in a practice contrary to sincerely held religious beliefs. See Meyer v. Nebraska,262 U.S. 390 (1923); Pierce v. Society of Sisters, 268 U.S. 510
(1925), Board of Education v. Barnette, 319 U.S. 624 (1943);Prince v. Massachusetts, 321 U.S. 158 (1944). It is my opinion that a court would in all likelihood apply the analysis reflected in Mozert, supra, wherein the 6th Circuit Court of Appeals stated:
 It is abundantly clear that the exposure to materials in the Holt series did not compel the plaintiffs to `declare a belief,' `communicate by word and sign [their] acceptance' of the ideas presented, or make an `affirmation of a belief and attitude of mind.' In Barnette the unconstitutional burden consisted of compulsion either to do an act that violated the plaintiff's religious convictions or communicate an acceptance of a particular idea or affirm a belief. No similar compulsion exists in the present case.
Mozert, 827 F.2d at 1066.
It is my opinion that a court would similarly conclude that no such compulsion exists with regard to this Curriculum. Having found none of the prohibited forms of governmental compulsion, I must conclude that the Curriculum imposes no impermissible burden on the free exercise of religion. And having found no such burden, there is no need to consider whether there is a "compelling governmental interest." Absent a very unique factual showing that would bring the case within the reach of Yoder,supra at n. 2, or actual proof of compulsion as addressed inMozert, supra, the Curriculum would, in my opinion, withstand scrutiny under PL 103-141 and the First Amendment.
With regard to A.C.A. § 6-18-703 (Repl. 1993), and the assertion that this Code section requires abstinence-based sex education, it must be noted that the relevant language is drawn from the Health Department's appropriation act (Act 1173 of 1993). Section 36 of the appropriation act is codified at subsections (a)(1) and (d) of A.C.A. § 6-18-703. The relevant language regarding "premarital abstinence" quoted in your correspondence states: ". . . every public school and public health department sex education and acquired immune deficiency syndrome prevention program shall emphasize premarital abstinence as the only sure means of avoiding pregnancy and the sexual contraction of acquired immune deficiency syndrome and other sexually transmitted diseases."
It is my opinion that this language reasonably has reference to sex education and AIDS prevention programs in school-based health clinics. Subsection (b) of § 6-18-703 clearly envisions the participation of Health Department employees in the clinics, and subsection (a)(1) (which is the codification of Section 36(b) of the appropriation act) addresses the establishment of school-based health clinics and parental consent to clinic services. These matters are reasonably included in the appropriation as they are related to the general object of the act, i.e., the appropriation for the various divisions and programs of the Arkansas Department of Health. This satisfies the so-called "unity of subject" rule encompassed in Article 5, Section 30 of the Arkansas Constitution.[3] See Clintonv. Taylor, 284 Ark. 238, 681 S.W.2d 338 (1984) (sections of an appropriation bill must be said to "accomplish a purpose of one design") and Reid v. Jones, 261 Ark. 550, 551 S.W.2d 191 (the different parts of the act must "relate, directly or indirectly, to the same general object fairly indicated by its title.") It cannot reasonably be contended, on the other hand, that the general object of the Health Department's appropriation act includes the curriculum included in public school health education courses outside the school clinic setting. This is a matter addressed by the Arkansas State Board of Education and the Arkansas Department of Education. (And, of course, local school officials.)
It is therefore my opinion that the language of § 6-18-703(d) regarding "public school and public health department sex education and [AIDS] prevention program" refers to programs involving both the public schools and the Health Department. The act would, otherwise, raise a constitutional issue as impermissibly expanding the subject of the appropriation. And it is well-established that the courts will construe a legislative enactment as constitutional if at all possible. See Cozad v.State, 303 Ark. 137, 792 S.W.2d 606 (1990).
Thus, in my opinion, § 6-18-703(d) cannot be construed to mandate the emphasis on "premarital abstinence" in a public school's health education curriculum, generally. Rather, this applies to the school clinic context. It is also my opinion, nevertheless, that even if this language did constitutionally apply outside the clinic setting, e.g., to a health or biology course, the Curriculum substantially complies with this requirement. My review indicates that taken as a whole, the Curriculum does reflect an emphasis upon premarital abstinence. See Curriculum at MS-10 and MS-33 (discussions regarding the benefits of marriage and "Case History: Reflecting on a Marriage of Twenty-four Years.")
With regard to the concern that homosexuality is legitimized contrary to Arkansas law, I am aware of no law that would prohibit the inclusion of information concerning homosexuality from a curriculum in the public schools. Whether you agree or disagree with the particular facts presented, there is no legal prohibition against presenting this subject matter. The fact that there is no reference to Arkansas' sodomy laws is not fatal to the Curriculum. The material does not suggest or indicate that students are encouraged to engage in unlawful acts. While inclusion of the sodomy laws may be desirable, this is a matter of discretion and judgment rather than a legal mandate.
In response to your two questions following reference to Section 36(b) of the appropriation act (A.C.A. § 6-18-703(a)(1)), it is my opinion that the answer to your first question involving parental consent is "no" if the instruction is offered in a context other than a school-based health clinic. No child may receive "school-based health clinic services" (emphasis added) without parental consent. A.C.A. § 6-18-703(a)(1)(A) (Repl. 1993). This prohibition does not apply, therefore, outside the health clinic setting.
With regard to the second question, involving "parents' basic rights," as stated by the Sixth Circuit Court of Appeals: "[t]he Supreme Court has long recognized the right of parents to the care, custody and nurture of their children as a liberty interest protected by the Fourteenth Amendment." Doe v. Irwin, supra
at n. 1, 615 F.2d at 1167 (citations omitted). The court in Doe
noted that the duty to prepare the child for "additional obligations," referred to by the U.S. Supreme Court in Pierce v.Society of Sisters, supra, 268 U.S. at 535, "must be read to include the inculcation of moral standards, religious beliefs, and elements of good citizenship." 615 F.2d at 1167.
Yet the court in Doe also recognized that the state has a "substantial interest in the health and welfare of all its inhabitants." Id. at 1162. The state has a "paramount and recognized duty to provide for the health, welfare, and safety of its citizens." Davis v. Page, supra, 385 F. Supp. at 404. With regard, specifically, to public education, local officials are ordinarily vested with wide discretion in the management of school affairs. Id. at 405. See also Ware, supra,551 N.Y.S. 2d at 172, citing Board of Educ. v. Pico, 457 U.S. 853
(1982); Fernandez, supra 584 N.Y.S. 2d at 411. The courts will generally be unwilling to substitute what may be considered a more desirable or acceptable program than that adopted by local school officials. Id. Deference to the education decisions of state and local officials is particularly apparent in matters of curriculum. Ware, 551 N.Y.S. 2d at 172, citing Keyishian v.Board of Regents, 385 U.S. 589 (1967).
With regard to the concern in this instance that parental rights are being eroded, I believe that the discretion ordinarily accorded local school officials will prevail in the absence of a showing that the school has somehow imposed compulsory requirements or prohibitions which affect those rights. Seegenerally Doe, supra. Again, as in the case of a free exercise claim, merely requiring attendance in a course where this Curriculum is used will likely be insufficient. Nor, in my opinion, is a constitutionally significant burden demonstrated merely by the contention that parents' wishes are being disregarded. It seems clear that parents have no constitutional right to tailor public school programs to individual preferences.See Epperson v. Arkansas, 393 U.S. 97 (1968). The Curriculum reflects no prohibition against the parents' participation in decisions of their children on issues of sexual activity. I have been presented with no information suggesting that parents do not remain free to exercise their traditional care, custody and control over their children. In the absence of such a showing, it is unlikely that a court would find an unconstitutional interference with parental rights.
With regard, finally, to the U.S. Department of Education "National Guideline" referenced in your correspondence, an initial question arises concerning the Guideline's applicability. I have not been supplied with information indicating that the Curriculum in question constitutes "health information provided by the Federal Government." Nor am I aware of the scope of the Guideline in this particular setting, or the effect of failure to follow it, assuming that it in fact applies. I am therefore unable to address the Guideline in the context of this Curriculum.
In conclusion, regarding the two subject areas of your questions set out on page 1 above, it is my opinion that the AIDS curriculum entitled "Preventing AIDS" does not conflict with federal or state law. The limits of authority of public schools are grounded in the First and Fourteenth Amendments to the U.S. Constitution, as discussed above. It appears that the issues raised in connection with this Curriculum are properly addressed to local school officials for consideration in connection with their authority and jurisdiction, as the districts' elected representatives, to develop educational curriculum for their respective schools.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] It should also be noted in this regard that the existence of an excusal policy will generally remove any free exercise claim. It has been stated that where there is no compulsion to participate, there can be no infringement on the free exercise of religion. See Smith v. Ricci, 89 N.J. 514, 446 A.2d 501
(1982); Doe v. Irwin, 615 F.2d 1162 (6th Cir. 1980).
[2] In finding an impermissible burden on free exercise, the Supreme Court in Yoder examined Amish life and culture in some detail, ultimately concluding that what was in issue were long-standing beliefs shared by an organized group, that the beliefs related to religious principles, and pervaded and regulated Amish daily life, and that the state law threatened the continued existence of the Old Order Amish church community.406 U.S. at 218. Yoder was decided in large part on the impossibility of reconciling the goals of public education with the religious requirements of the Amish that their children be prepared for life in a separated community. It has been stated that "[t]he reach of Yoder is plainly limited." Ware,supra, 550 N.E. 2d at 427. The Supreme Court itself cautioned that its holding would apply to "probably few other religious groups or sects" and that "courts must move with great circumspection in performing the sensitive and delicate task of weighing a State's legitimate social concern when faced with religious claims for exemption from generally applicable educational requirements." 406 U.S. at 235-236. Commentators have speculated that "[f]ew future free exercise claimants are likely to match the testimony of extreme injury relied upon by the Supreme Court in Yoder." Pepper, Reynolds, Yoder and Beyond: Alternatives for the Free Exercise Clause, 1981 Utah L. Rev. 309, 338; Smith, CONSTITUTIONAL RIGHTS OF STUDENTS, THEIR FAMILIES, AND TEACHERS IN THE PUBLIC SCHOOLS, 10 Campbell L. Rev. 353, 376-379 (1988).
[3] This constitutional provision states that "[t]he general appropriation bill shall embrace nothing but appropriations for the ordinary expense of the executive, legislative and judicial departments of the State; all other appropriations shall be made by separate bills, each embracing but one subject." Ark. Const. art. 5, § 30.